446     APPELLATE COURTS OF ILLINOIS.

Pridmore v. The Chicago, R. I. & P. R. Co., 192 Ill. App. 446.

William T. Pridmore, Administrator, Appellee, v. The Chicago, Rock Island & Pacific Railroad Company, Appellant.

Gen. No. 19,359.   (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed February 3, 1915. Rehearing allowed February 18, 1915, and opinion filed April 28, 1915.

## Statement of the Case.

In this suit instituted in the Superior Court by William T. Pridmore, administrator of the estate of William T. Pridmore, Sr., deceased, against the Chicago, Rock Island & Pacific Railroad Company to recover damages for the alleged wrongful death of plaintiff's intestate, a trial by jury resulted in a verdict and judgment against the defendant for forty-five hundred dollars.

On the night of July 11, 1910, defendant had two cars of grain for delivery at the yards of the Pennsylvania Railroad Company at Roby, Indiana, which delivery defendant desired to make on or before twelve o'clock midnight in order to avoid the payment of demurrage charges on said cars. Defendant procured permission from the Pennsylvania Company to haul said cars upon the tracks of that company from Rock Island Junction, where the tracks of the two companies intersected, to Roby. The distance between those two points is not disclosed by the record, but the evidence shows that the distance from River Branch Junction, a point a short distance east of Rock Island Junction, to Roby is two miles. Defendant's train crew, consisting of a conductor, locomotive engineer, fireman and two flagmen, operating the train,

consisting of defendant's locomotive No. 113 and the said two cars of grain, left Rock Island Junction upon the eastbound track of the Pennsylvania Company at 11:50 or 11:56 P. M. and arrived at Roby at 11:58 P. M. or 12:01 A. M. The tracks of the Pennsylvania Company between said points were at street grade. After crossing the Calumet River the tracks of the Pennsylvania Company running in a southeasterly direction intersect in the order named, Avenue N. Avenue M, Avenue L and Ewing avenue, all of which run north and south. Whether crossing flagmen were stationed at each of the avenues named does not clearly appear, but it does appear that at the railroad crossings at Avenue L and Ewing avenue crossing flagmen employed by the Pennsylvania Company were stationed at night. One, Rinnman, was stationed at the Avenue L crossing, and plaintiff's intestate was stationed at the Ewing avenue crossing near its intersection with One-Hundredth street. There was no eyewitness of the occurrence which resulted in the death of plaintiff's intestate. The flagman's shanty which was occupied by the deceased was located east of Ewing avenue and south of the railroad tracks. Rinnman testified that at about midnight on the night in question he was looking towards the crossing on Ewing avenue and saw a freight train approaching that crossing from the east; that he saw a lantern moving in a northerly direction from the flagman's shanty at said crossing and come to a stop at the center of said crossing at a point north of the westbound track; that after said freight train had cleared said crossing he saw the lantern moving back across the crossing towards the shanty; that about the time said westbound train cleared his crossing at Avenue L a locomotive and two cars passed him on the eastbound track, and that he did not again see the lantern at the Ewing avenue crossing; that after the locomotive and two cars had passed east, two regularly scheduled trains also passed

going east, and that failing to then see any lantern at the Ewing avenue crossing his suspicions were aroused and he went to that crossing for the purpose of making an inspection; that he there saw the dead body of appellee's intestate. The body was first found between the rails of the eastbound track about two hundred fifty feet east of the shanty. The evidence tends to show that the night was dark and that the streets in the immediate vicinity of the Ewing avenue crossing were but dimly lighted.

The evidence showed that the locomotive and two cars then being operated by the servants of defendant were running at a speed of from thirty-five to fifty miles an hour at the time they approached and crossed Ewing avenue; that the headlight upon said locomotive was not then lighted, and that no bell was then rung and no whistle was then sounded. While plaintiff offered no evidence as to the habits of the deceased regarding care for his own safety, proof was made showing that he was an industrious, sober, strong, healthy and intelligent man in possession of all his faculties.

M. L. BELL and A. B. ENOCH, for appellant.

FRANK P. SADLER, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

### Abstract of the Decision.

1. RAILROADS, § 733*—*when evidence shows negligent operation.* In an action for the death of a crossing flagman, who was killed by the train of another railroad operating under a license upon the tracks of decedent's employer, evidence *held* to show negligence on the part of defendant in operating its train at high

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Pridmore v. The Chicago, R. I. & P. R. Co., 192 Ill. App. 446.

speed at night without a headlight and without giving warning signals.

2. EVIDENCE, § 267*—*when train registers admissible.* Train registers containing. notations made by telegraph operators who were called as witnesses, showing the time of the arrival and departure of trains from the stations at which they were employed are admissible.

3. EVIDENCE, § 267*—*when railroad records admissible against licensee railroad.* A railroad company operating its trains upon the tracks of another company becomes subject to the rules and regulations governing the operation of trains of the latter company, and train records made in the ordinary course of business which would be competent evidence in an action against the latter are competent against the former.

4. APPEAL AND ERROR, § 1469*—*when admission of hearsay evidence harmless.* Even though a train register showing the time of the departure of a train from a certain station, entered upon telegraphic information from the operator at such station, who was not called as a witness, was incompetent as hearsay, its admission was *held* harmless where the running time between such station and another point was not in issue and the usual running time of trains between the two points was shown by other evidence.

5. EVIDENCE, § 377*—*when admission of opinion as to giving of signals not erroneous.* Where a witness testified that he did not hear an engine whistle as it approached a certain point, a question as to whether or not in his opinion the engine whistled, while objectionable in form, *held* not erroneous, being closely akin to the approved line of inquiry as to whether if the whistle had been sounded he would have heard it.

6. APPEAL AND ERROR, § 1505*—*when calling of witness by court harmless.* The calling by the court of an employee of defendant as a hostile witness, without a showing on the part of plaintiff to justify it, *held* harmless error where the same witness was subsequently called by the defendant and the same ground covered on direct and cross-examination.

7. MUNICIPAL CORPORATIONS, § 104*—*when ordinance conditionally effective inadmissible.* An ordinance which by its terms, is not to become effective until the performance of certain conditions is properly excluded in the absence of proof of the performance of such conditions.

8. RAILROADS, § 461*—*who within protection of statute regulating rate of speed.* A crossing flagman killed by the train of another

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

company operating over the tracks of his employer is within the protection of statutes and ordinances relating to the speed of trains.

9. RAILROADS, § 464*—*who within protection of statute as warning.* A crossing flagman killed by the train of another company operating over the tracks of his employer is within the protection of statutes and ordinances requiring headlights on trains and the giving of warning signals.

10. INSTRUCTIONS, § 1*—*use of expressions found in judicial opinions.* Isolated and fragmentary expressions found in judicial opinions may very infrequently be safely employed as vehicles for accurate statements as to the law of a case, to be embodied in instructions.